1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10    ISSAC DA'BOUR DAWSON,                    Case No. 1:15-cv-01867 DLB

11                    Plaintiff,              ORDER DIRECTING PLAINTIFF TO FILE
                                              AMENDED COMPLAINT **OR** NOTIFY
12            v.                              COURT OF WILLINGNESS TO PROCEED
                                              ONLY ON COGNIZABLE CLAIMS
13    BEARD, et al.,
                                              THIRTY-DAY DEADLINE
14                    Defendants.

15    _____/

16            Plaintiff Issac Da'Bour Dawson ("Plaintiff"), a state inmate in the custody of the

17    California Department of Corrections and Rehabilitation ("CDCR"), is proceeding pro se and in

18    forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action

19    on December 14, 2015.  He names CDCR Secretary Beard, Corcoran State Prison ("CSP")

20    Warden Davey, CSP Assistant Warden Jennings, CSP Captain Whitford, CSP Lt. Marsh, CSP Sgt.

21    Gonzales, CSP Sgt. Arnett, and CSP Correctional Officers Johnson, Guzman, Sheldon, Noland

22    and Flores as Defendants.[1]

23    **A.     SCREENING STANDARD**

24            The Court is required to screen complaints brought by prisoners seeking relief against a

25    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

26    Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

27    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

28    _____

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on December 28, 2015.

1  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

2  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

3  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

4  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

5        A complaint must contain "a short and plain statement of the claim showing that the

6  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

7  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

8  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing

9  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual

10  matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550

11  U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

12        Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

13  other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d

14  1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

15  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions

16  or omissions of each named defendant to a violation of his rights; there is no respondeat superior

17  liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609

18  F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.

19  2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a

20  plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962,

21  969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility

22  standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

23  **B.**    **FACTUAL ALLEGATIONS**

24        Plaintiff is currently incarcerated at High Desert State Prison.  The events at issue occurred

25  while he was incarcerated at Corcoran State Prison in Corcoran, California.

26        On May 17, 2014, Plaintiff was released from his housing unit to morning religious House

27  of Yahweh services.  On his way, Plaintiff had to use the restroom.  While he was waiting to use

28  the restroom, he was called back to his housing unit via the loudspeaker.

Plaintiff returned to his housing unit and Defendant Johnson placed him in the shower. Defendant Johnson ordered him to strip naked and submit to an unclothed body inspection. "Without warning or reason," Plaintiff was instructed to open his buttocks for inspection.  He was then instructed to squat twice and cough.  ECF No. 1, at 4.  Defendant Johnson told Plaintiff to face him and lift his penis and scrotum.  Afterwards, Plaintiff was instructed to report back to his cell.  He was never told why he was subjected to a "humiliating body cavity inspection."  ECF No. 1, at 4.

On May 18, 2014, Plaintiff was released to religious services.  While attending services, Plaintiff went to use the restroom twice.  Five minutes after his second visit, Defendants Sheldon and Guzman interrupted services and told Plaintiff to get up.  Plaintiff was then escorted to the yard patio, which was occupied by at least 100 other prisoners, female guards and staff.

Defendant Gonzales instructed Defendants Guzman and Sheldon to strip search Plaintiff in front of prisoners and female staff.  Defendants Guzman and Sheldon ordered Plaintiff to remove his clothing while Defendant Gonzales watched.  Plaintiff was instructed to spread his buttocks, squat twice and cough, and lift his penis and scrotum.  Plaintiff contends that he was humiliated in full view of prisoners and female staff members.  Defendants did not provide an explanation to justify the search.

When Plaintiff tried to put his clothing back on, Defendant Guzman told him to put on only his boxers and then walk back to his housing unit.  Plaintiff asked that he be allowed to fully dress because he felt humiliated.  Defendant Guzman told him no and said that Plaintiff would be written up for failing to follow staff instructions if he did not walk back as instructed.

Plaintiff complied and began walking, feeling ashamed and belittled.  Plaintiff has a mental health disorder and is a participant in the prison's CCCMS program, and he contends that he did not know how to react or deal with the traumatizing situation.  As time went on, he became severely depressed and ashamed to leave his cell.

On June 9, 2014, Plaintiff filed an appeal relating to Defendants' actions on May 17 and 18.

///

3

On June 19, 2014, Plaintiff received a retaliatory Rules Violation Report ("RVR") authored by Defendants Guzman, Gonzales and Marsh.  The RVR falsely stated that Plaintiff delayed a peace officer during the custody count on May 18.  Plaintiff contends that at the time of the custody count, he was being humiliated by Defendants Guzman, Sheldon and Gonzales and therefore could not return back to his housing unit.

Defendant Marsh found Plaintiff guilty of the violation after a hearing, even though he knew that Plaintiff was being strip searched at the time of the count, and had the supporting evidence.

On July 1, 2014, Plaintiff was interviewed by Defendant Arnett about his appeal.  The interview consisted of Defendant Arnett urging Plaintiff to withdraw his appeal.  He offered Plaintiff material items, promised Plaintiff that the RVR would be dropped, and promised to reinstate Plaintiff on the religious services list.

Plaintiff declined to withdraw his appeal and told Defendant Arnett that he was violating CDCR policy and Plaintiff's constitutional rights.  Defendant Arnett told Plaintiff that he would regret his decision, and that the rest of Plaintiff's prison time served on Defendant Arnett's yard would be difficult.

Since that threat, Plaintiff has been removed from the religious services attendance list, which denied him the ability to practice his religion.  Each time that he has tried to gain access to religious services, he has been denied.  On June 7, 2014, Plaintiff tried to access services and was denied by Defendant Noland, who told him that Defendant Marsh ordered that Plaintiff not be permitted to attend any religious services.

He has also been harassed and forced to endure unreasonable and unwarranted cell searches and body searches.

On July 8, 2014, Plaintiff again attempted to access religious service, but was denied by Defendant Flores.  Defendant Flores told him that the denial was based on his refusal to withdraw his appeal.

Plaintiff was also denied his right to fast from August 14, 2014, through September 14, 2014, which was part of his religious worship.

1    Each time Plaintiff passed Defendants Flores, Guzman or Gonzales, he was singled out and

2    called degrading names, and threatened with strip searches.

3    Plaintiff alleges that Defendants Beard, Davey and Jennings are responsible for

4    supervising and training Defendants.  He contends that these supervisory Defendants failed to

5    provide their employees with the proper training, which resulted in a violation of Plaintiff's

6    constitutional rights.

7    Based on these facts, Plaintiff  alleges the following causes of action: (1) violation of the

8    Fourth and Eighth Amendment by Defendants Johnson, Guzman, Sheldon and Gonzales based on

9    the unlawful strip search(s); (2) violation of the First Amendment by Defendants Johnson,

10   Guzman, Sheldon, Gonzales, Marsh, Arnett, Noland and Flores based on the denial of his right to

11   practice his religion; (3) violation of the First and Fourteenth Amendments by Defendants

12   Guzman, Gonzales, Marsh and Whitford for retaliatory falsification of an RVR; (4) violation of

13   the First, Fourth and Eighth Amendments by Defendant Arnett for retaliatory cell searches and

14   intimidation; (5) violation of the First, Fourth, Eighth and Fourteenth Amendments by Defendants

15   Beard, Davey and Jennings for failing to properly train and/or supervise their subordinates; and (6)

16   intentional and negligence infliction of emotional distress.

17   **C.     <u>DISCUSSION</u>**

18        1.     <u>Linkage</u>

19   Pro se litigants are entitled to have their pleadings liberally construed and to have any

20   doubt resolved in their favor, <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121-23 (9th Cir. 2012); <u>Hebbe</u>

21   <u>v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to

22   survive screening, which requires sufficient factual detail to allow the Court to reasonably infer

23   that each named defendant is liable for the misconduct alleged, <u>Iqbal</u>, 556 U.S. at 678 (quotation

24   marks omitted); <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  As explained

25   above, the sheer possibility that a defendant acted unlawfully is not sufficient, and mere

26   consistency with liability falls short of satisfying the plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678

27   (quotation marks omitted); <u>Moss</u>, 572 F.3d at 969.

28   ///

1   Here, Plaintiff names Defendant Whitford as a Defendant and includes him in his claim

2   based on a the false RVR.  However, he does not set forth any facts to explain how Defendant

3   Whitford was involved.  Plaintiff states that Defendants "R. Whitford, T. Marsh, J. Gonzales"

4   failed to review exculpatory evidence, in violation of his due process rights, but this conclusory

5   statement is insufficient to satisfy the requirements of Rule 8.

6   Plaintiff therefore fails to state a claim against Defendant Whitford.

7   2.   Unclothed Body Searches

8   a.   *Fourth Amendment*

9   The Fourth Amendment guarantees the right of the people to be secure against

10  unreasonable searches, and its protections extend to incarcerated prisoners.  Bell v. Wolfish, 441

11  U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  In determining the reasonableness of a

12  search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion,

13  the manner in which it is conducted, the justification for initiating it, and the place in which it is

14  conducted."  Id. at 559.  The reasonableness of a prisoner search is determined by reference to the

15  prison context.  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988).  "When a prison

16  regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

17  related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254, 96

18  L.Ed.2d 64 (1987).

19  In analyzing these factors, the cross-gender nature of the search is a critical consideration.

20  Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1143 (9th Cir. 2011).  It has long been

21  recognized "that the desire to shield one's unclothed figure from the view of strangers, and

22  particularly strangers of the opposite sex, is impelled by elementary self-respect and personal

23  dignity," id. at 1141 (citing York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)) (internal quotation

24  marks and alternations omitted), and the Ninth Circuit recently stated that the "litany of cases over

25  the last thirty years has a recurring theme: cross gender strip searches in the absence of an

26  emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable

27  searches," id. at 1146.

28  ///

6

1   Plaintiff alleges that the unclothed strip searches were conducted without reason and, at
2   least with regard to the second search, out in the open in front of prisoners and female staff.  At the
3   screening stage, the Court finds that this states a claim under the Fourth Amendment against
4   Defendants Guzman, Gonzales, Sheldon and Johnson.

5   b.   *Eighth Amendment*

6   The Eighth Amendment protects prisoners from inhumane methods of punishment and
7   from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th
8   Cir.2006).  In some instances, infliction of emotional pain may constitute cruel and unusual
9   punishment prohibited by the Eighth Amendment.  See Jordan v. Gardner, 986 F.2d 1521, 1524
10  (9th Cir.1993) (en banc) (holding that contact searches of female prisoners by male guards
11  violated Eighth Amendment).  Prison officials are not liable for inflicting pain on a prisoner
12  through body search techniques unless the official acted with deliberate indifference to a serious
13  risk of harm to the prisoners, id. at 1528, or subjected the prisoner to "unnecessary and wanton
14  infliction of pain," see Koch v. Ricketts, 82 F.3d 317, 318 (9th Cir.1996) (acknowledging that
15  prison guards' conducting a body cavity search could in certain circumstances violate an inmate's
16  Eighth Amendment rights).

17  The circumstances, nature, and duration of the deprivations are critical in determining
18  whether the conditions complained of are grave enough to form the basis of a viable Eighth
19  Amendment claim, and "routine discomfort inherent in the prison setting" does not rise to
20  the level of a constitutional violation.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

21  Here, while Plaintiff alleges that he was subject to two unclothed body searches, the
22  searches did not result in Plaintiff being subjected to conditions so severe and/or prolonged that
23  they rise to the level of an Eighth Amendment violation.  Johnson, 217 F.3d at 731-32.  The mere
24  public nature of the searches, or any resulting embarrassment, is not sufficient to implicate the
25  Eighth Amendment.  Somers v. Thurman, 109 F.3d 614, 622-23 (9th Cir.1997).

26  3.   Denial of Right to Practice Religion

27  "[P]risoners retain the protections of the First Amendment" but their "right to freely
28  exercise [their] religion is limited by institutional objectives and by the loss of freedom

7

1 | concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114,

2 | 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400

3 | (1997)).  The protections of the Free Exercise Clause are triggered when prison officials

4 | substantially burden the practice of an inmate's religion by preventing him from engaging in

5 | conduct which he sincerely believes is consistent with his faith, but an impingement on an

6 | inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological

7 | interests.'"  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley,

8 | 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)).

9 | Plaintiff alleges that on numerous occasions, he was denied access to religious services.

10 | He also alleges that he was denied the right to fast, though he does not fully explain that

11 | allegation.  Plaintiff does not, however, allege or explain why these denials substantially burdened

12 | his ability to practice his religion by preventing him from engaging in conduct which he sincerely

13 | believes is consistent with his faith.

14 | Plaintiff therefore fails to state a claim under the First Amendment.

15 | 4.   False RVR/Disciplinary Hearing

16 | a.   *False RVR*

17 | Insofar as Plaintiff alleges that Defendants Guzman, Gonzales, Marsh and Whitford

18 | violated the First and Fourteenth Amendments by issuing a false RVR, he cannot state a claim.

19 | The issuance of a false RVR does not, in and of itself, support a claim under section 1983.  See

20 | e.g., Ellis v. Foulk, 2014 WL 4676530, at *2 (E.D.Cal. 2014) ("Plaintiff's protection from the

21 | arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in

22 | Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon

23 | v. Meyer, 2014 WL 294576, at *2 (N.D.Cal. 2014) ("[T]here is no constitutionally protected right

24 | to be free from false disciplinary charges.") (citing Chavira v. Rankin, 2012 WL 5914913, at *1

25 | (N.D.Cal. 2012) ("The Constitution demands due process, not error-free decision-making."));

26 | Johnson v. Felker, 2013 WL 6243280, at *6 (E.D.Cal. 2013) ("Prisoners have no constitutionally

27 | guaranteed right to be free from false accusations of misconduct, so the mere falsification of a

28 | [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v.

8

1  Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d.

2  Cir. 1986)).

3        The issuance of a false RVR, alone, does not state a claim under section 1983.  Any claim

4  would arise from Plaintiff's procedural due process rights, discussed below.

5               b.   *Disciplinary Hearing*

6        "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

7  panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418

8  U.S. 539, 556, 94 S.Ct. 2963 (1974).  With respect to prison disciplinary proceedings, the

9  minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at

10 least 24 hours between the time the prisoner receives written notice and the time of the hearing, so

11 that the prisoner may prepare his defense; (3) a written statement by the fact finders of the

12 evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call

13 witnesses in his defense, when permitting him to do so would not be unduly hazardous to

14 institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner

15 is illiterate or the issues presented are legally complex.  Id. at 563-71.  As long as the five

16 minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d

17 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472

18 (1995).

19       In addition, "some evidence" must support the decision of the hearing officer,

20 Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985), and the evidence must have

21 some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).  The "some

22 evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any

23 evidence in the record that could support the conclusion reached. . . ."  Hill, 472 U.S. at 455-56

24 (emphasis added).

25       Here, Plaintiff alleges that Defendant Marsh, the hearing officer, found him guilty even

26 though "he was in possession and/or reach of evidence/ information" which he knew to be true,

27 and which Plaintiff characterizes as "exculpatory" in nature.  ECF No. 1, at 6.  Plaintiff alleges

28 that it was Defendant Marsh's duty to review exculpatory evidence and dismiss or modify the

1  pending charges.  He suggests that Defendant Marsh purposefully prevented Plaintiff from

2  presenting his evidence.

3        While Plaintiff may ultimately state a claim for relief, his allegations are too vague to do so

4  at this time.  On one hand, Plaintiff states that Defendant Marsh knew of the evidence yet found

5  him guilty nonetheless.  Simply disagreeing with evidence, without more, does not state a claim.

6  On the other hand, Plaintiff states that Defendant Marsh affirmatively prevented him from

7  providing evidence.  Preventing a prisoner from presenting evidence may rise to the level of a due

8  process violation, but Plaintiff must offer more specific information about his evidence before the

9  Court can properly analyze his claim.

10              c.    ***Retaliation***

11       "Prisoners have a First Amendment right to file grievances against prison officials and to

12  be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012)

13  (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Within the prison context, a

14  viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

15  state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

16  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

17  (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>,

18  408 F.3d 559, 567-68 (9th Cir. 2005).

19       Plaintiff alleges that he was issued a false RVR, and subsequently found guilty of the

20  charges, in retaliation for filing a grievance related to the search.  At the screening stage, this is

21  sufficient to state a First Amendment claim against Defendants Guzman, Gonzales and Marsh.

22           5.    <u>Retaliatory Cell Searches and Intimidation</u>

23       Plaintiff does not set forth supporting facts relating to his claim that Defendant Arnett

24  conducted retaliatory cell searches.  He states that Defendant Arnett told him, in retaliation for

25  refusing to withdraw his grievances, that rest of his prison time served on Defendant Arnett's yard

26  would be difficult.  He alleges later that he has been harassed and forced to endure unreasonable

27  and unwarranted cell searches and body searches, though he does not provide facts as to the

28  ///

1 | instances of unwarranted searches or who conducted the searches.  Given this failure, Plaintiff

2 | does not state a claim under the First, Fourth or Eighth Amendments.

3 | Insofar as Plaintiff believes that harassment and/or intimidation alone gives rise to an

4 | Eighth Amendment claim, he is incorrect.  Verbal harassment or abuse alone is not sufficient to

5 | state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and

6 | threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th

7 | Cir. 1987).

8 | 6.     Failure to Train and/or Supervise

9 | Liability may not be imposed on supervisory personnel under the theory of respondeat

10 | superior, as each defendant is only liable for his or her own misconduct.  Ashcroft v. Iqbal, 556

11 | U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); Ewing v. City of Stockton, 588 F.3d 1218,

12 | 1235 (9th Cir. 2009).  A supervisor may be held liable only if he or she "participated in or directed

13 | the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880

14 | F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011),

15 | cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009);

16 | Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007);

17 | Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

18 | Plaintiff asserts a failure to train theory against supervisory Defendants Beard, Davey and

19 | Jennings.  However, regardless of the theory under which a claimant attempts to impose liability

20 | on supervisory personnel, facts must exist to demonstrate that those in a supervisory position *knew*

21 | of the inadequacies and failed to correct them. A conclusory assertion that Defendants failed to

22 | properly train and supervise staff will not support a cognizable claim for relief under section 1983.

23 | Crowley, 734 F.3d at 977; Lemire, 726 F.3d at 1074-75; see also Marsh v. County of San Diego,

24 | 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional

25 | violation are insufficient to support a "failure to train" theory).

26 | ///

27 | ///

28 | ///

11

1          7.      State Law Claims

2          Plaintiff alleges claims under state law for intentional infliction of emotional distress and

3  negligent infliction of emotional distress.  However, the Government Claims Act requires

4  exhaustion of those claims with the California Victim Compensation and Government Claims

5  Board, and Plaintiff is required to specifically allege compliance in his complaint.  Shirk v. Vista

6  Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty.

7  (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc.

8  Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d

9  1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th

10  Cir. 1988).

11         Plaintiff has not alleged compliance with the claims process and he therefore cannot state

12  any tort claims under California law.  The Court provides the following standards in the event that

13  Plaintiff can successfully amend to allege timely compliance.

14              a.      *Intentional Infliction of Emotional Distress*

15         Under California law, the elements of intentional infliction of emotional distress are: (1)

16  extreme and outrageous conduct by the defendant with the intention of causing, or reckless

17  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

18  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

19  defendant's outrageous conduct.  Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation

20  marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v. Union of

21  Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003).  Conduct is

22  outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized

23  community.  Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622.

24              b.      *Negligence Infliction of Emotional Distress*

25         The negligent infliction of emotional distress is not an independent tort but the tort of

26  negligence to which the traditional elements of duty, breach of duty, causation and damages apply.

27  Wong v. Tai Jin, 117 Cal.Rptr.3d 747, 767 (Cal. Ct. App. 2010) (quotation marks omitted); Potter

28  v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984 (Cal. 1993); Burgess v. Superior Court, 2

1  Cal.4th 1064, 1072 (Cal. 1992).  Where there is no personal, physical injury, the emotional

2  distress must have been serious, which is the functional equivalent to severe emotional distress.

3  Schwarz v. Lassen County ex rel. Lassen County Jail (Detention Facility), 2011 WL 3319626, at

4  *9 (E.D.Cal. 2011) (quotation marks omitted) (citing Wong, 117 Cal.Rptr.3d at 768).

5  **D.    CONCLUSION AND ORDER**

6       Plaintiff's complaint states a Fourth Amendment claim against Defendants Johnson,

7  Guzman, Gonzales and Sheldon, and a First Amendment retaliation claim against Defendants

8  Guzman, Gonzales and Marsh.  It does not state any other claims against any other Defendants.

9       Plaintiff has not previously been provided with notice of the deficiencies in his claims and

10  the Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes,

11  in good faith, he can cure the identified deficiencies.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13

12  (9th Cir. 2012); Lopez, 203 F.3d at 1130-31; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir.

13  1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated

14  claims in his amended complaint.  George, 507 F.3d at 607.

15       However, if Plaintiff does not wish to file an amended complaint and he is agreeable to

16  proceeding only on his cognizable Fourth Amendment claim against Defendants Johnson,

17  Guzman, Gonzales and Sheldon, and First Amendment retaliation claim against Defendants

18  Guzman, Gonzales and Marsh, he may file a notice informing the Court that he does not intend to

19  amend and he is willing to proceed only on his cognizable claims.  The Court will then provide

20  Plaintiff with the requisite forms to complete and return so that service of process may be initiated

21  on Defendants Johnson, Guzman, Gonzales, Sheldon and Marsh, and the remaining claims and

22  Defendants will be dismissed.

23       If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under

24  section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's

25  constitutional rights and liability may not be imposed on supervisory personnel under the theory of

26  respondeat superior, Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.  Although accepted as

27  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

28  level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

1      Finally, an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa</u>

2  <u>County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without

3  reference to the prior or superceded pleading," Local Rule 220.

4      Accordingly, it is HEREBY ORDERED that:

5      1.      The Clerk's Office shall send Plaintiff a complaint form;

6      2.      Within thirty (30) days from the date of service of this order, Plaintiff must either:

7              a.      File an amended complaint curing the deficiencies identified by the Court in

8                      this order, or

9              b.      Notify the Court in writing that he does not wish to file an amended

10                     complaint and he is willing to proceed only against Defendants Johnson,

11                     Gonzales, Guzman, Sheldon and Marsh on his cognizable First and Fourth

12                     Amendment claims; and

13     3.      <u>If Plaintiff fails to comply with this order, this action will be dismissed, without</u>

14             <u>prejudice, for failure to obey a court order.</u>

15
   IT IS SO ORDERED.
16

17     Dated:   **February 26, 2016**              /s/ *Dennis L. Beck*

18                                            UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

14