UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISSAC DA'BOUR DAWSON,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CDCR, et al.,<br><br>　　　　Defendants. | 1:15-cv-01867-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART**<br>**(ECF No. 27.)**<br><br>**AND**<br><br>**RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS UNDER LOCAL RULE 110, OR IN THE ALTERNATIVE, TO DEEM THAT PLAINTIFF WAIVED HIS OPPOSITION AND GRANT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE DENIED**<br>**(ECF No. 49.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.　BACKGROUND

Issac Da'bour Dawson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's initial Complaint filed on December 14, 2015, on Plaintiff's Fourth Amendment claims against defendants Correctional Officer (C/O) Johnson, C/O Guzman, Sergeant

1

Gonzales, and C/O Sheldon, and First Amendment retaliation claims against defendants C/O Guzman, Sergeant Gonzales, and Lieutenant Marsh. (ECF No. 1.)

On December 14, 2016, defendants Guzman, Gonzales, Marsh, and Johnson ("Defendants") filed a Rule 12(b)(6) motion to dismiss some of the claims against them for failure to state a claim. (ECF No. 27.) On May 2, 2017, Plaintiff filed a "Motion to File a Statement of Non-opposition." (ECF No. 33.) On August 7, 2017, Plaintiff filed a "Motion to Attack Defendants' Opposition." (ECF No. 48.) On August 14, 2017, Defendants filed a "Response to 'Motion to Attack,' or Alternatively, Reply to Opposition to Motion to Dismiss," in which they brought a motion to dismiss the case under Local Rule 110, or in the alternative, to grant the 12(b)(6) motion as unopposed. (ECF No. 49.) On September 18, 2017, Plaintiff filed a "Motion: Filing a Non-opposition to the Defendants' Motion." (ECF No. 58.)

Defendants' motions to dismiss are now before the court.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is presently a state prisoner in the custody of the California Department of Corrections and Rehabilitation, incarcerated at High Desert State Prison in Susanville, California. The events at issue in the Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff's factual allegations follow.

On May 17, 2014, Plaintiff was released from his housing unit to morning religious House of Yahweh services. On his way Plaintiff had to use the restroom. While he was waiting to use the restroom he was called back to his housing unit via the loudspeaker. Plaintiff returned to his housing unit and defendant C/O Johnson placed him in the shower.

Defendant Johnson ordered Plaintiff to strip naked and submit to an unclothed body inspection. "Without warning or reason," Plaintiff was instructed to open his buttocks for inspection. (Complaint at 4:11-13.) He was then instructed to squat twice and cough. Defendant Johnson told Plaintiff to face him and lift his penis and scrotum. Afterwards, Plaintiff was instructed to report back to his cell. He was never told why he was subjected to a "humiliating body cavity inspection." (Complaint at 4:18-19.)

On May 18, 2014, Plaintiff was released to religious services. While attending services Plaintiff went to use the restroom twice. Five minutes after his second visit, defendants C/O Sheldon and C/O Guzman interrupted services and told Plaintiff to get up. Plaintiff was then escorted to the yard patio, which was occupied by at least 100 other prisoners, female guards, and staff. Defendant Sergeant Gonzales instructed defendants Guzman and Sheldon to strip search Plaintiff in front of prisoners and female staff. Defendants Guzman and Sheldon ordered Plaintiff to remove his clothing while defendant Gonzales watched. Plaintiff was instructed to spread his buttocks, squat twice and cough, and lift his penis and scrotum. Plaintiff contends that he was humiliated in full view of prisoners and female staff members. Defendants did not provide an explanation to justify the search.

When Plaintiff tried to put his clothing back on, defendant Guzman told him to put on only his boxers and then walk back to his housing unit. Plaintiff asked that he be allowed to fully dress because he felt humiliated. Defendant Guzman told him no and said that Plaintiff would be written up for failing to follow staff instructions if he did not walk back as instructed. Plaintiff complied and began walking, feeling ashamed and belittled. Plaintiff has a mental health disorder and is a participant in the prison's CCCMS program and contends that he did not know how to react or deal with the traumatizing situation. As time went on, he became severely depressed and ashamed to leave his cell.

On June 9, 2014, Plaintiff filed an appeal relating to Defendants' actions that occured on May 17 and 18. On June 19, 2014, Plaintiff received a retaliatory Rules Violation Report ("RVR") authored by defendants Guzman, Gonzales and Lieutenant Marsh. The RVR falsely stated that Plaintiff delayed a peace officer during the custody count on May 18. Plaintiff contends that at the time of the custody count he was being humiliated by defendants Guzman, Sheldon and Gonzales and therefore could not return back to his housing unit. Defendant Marsh found Plaintiff guilty of the violation after a hearing, even though he knew that Plaintiff was being strip searched at the time of the count and had the supporting evidence.

On July 1, 2014, Plaintiff was interviewed by Sergeant Arnett [not a defendant] about his appeal. The interview consisted of Sergeant Arnett urging Plaintiff to withdraw his appeal.

He offered Plaintiff material items, promised Plaintiff that the RVR would be dropped, and promised to reinstate Plaintiff on the religious services list. Plaintiff declined to withdraw his appeal and told Sergeant Arnett that he was violating CDCR policy and Plaintiff's constitutional rights. Sergeant Arnett told Plaintiff that he would regret his decision and that the rest of Plaintiff's prison time served on Sergeant Arnett's yard would be difficult.

Since that threat Plaintiff has been removed from the religious services attendance list, which denied him the ability to practice his religion. Each time that he has tried to gain access to religious services he has been denied. On June 7, 2014, Plaintiff tried to access services and was denied by Officer Noland [not a defendant], who told him that defendant Marsh ordered that Plaintiff not be permitted to attend any religious services. He has also been harassed and forced to endure unreasonable and unwarranted cell searches and body searches. On July 8, 2014, Plaintiff again attempted to access religious services but was denied by Officer Flores [not a defendant]. Officer Flores told Plaintiff that the denial was based on his refusal to withdraw his appeal. Plaintiff was also denied his right to fast from August 14, 2014, through September 14, 2014, which was part of his religious worship. Each time Plaintiff passed Flores, Guzman or Gonzales, he was singled out, called degrading names, and threatened with strip searches.

Plaintiff alleges that Jeffrey Beard (Secretary of CDCR), Davey (Warden), and Jennings (Assistant Warden), [not defendants], are responsible for supervising and training Defendants. Plaintiff contends that these supervisors failed to provide their employees with the proper training, which resulted in a violation of Plaintiff's constitutional rights.

**III.     RULE 12(b)(6) MOTION TO DISMISS – LEGAL STANDARD**

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139

(1984); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). There are, however, two exceptions to this general rule which do not demand converting the motion to dismiss into one for summary judgment. Sherman v. Stryker Corp., No. SACV 09-224JVS(ANX), 2009 WL 2241664, at *2 (C.D.Cal. Mar. 30, 2009) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). First, a court may consider material that is either attached to the complaint or material upon which the complaint relies, provided the material's authenticity is not contested. Id. Second, under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not subject to reasonable dispute. Id.

## IV.  DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

Defendants move to dismiss some of the claims against them in Plaintiff's Complaint under Rule 12(b)(6) on the following grounds: (1) Plaintiff fails to state a First Amendment retaliation claim against defendants Guzman, Gonzales, or Marsh; (2) Plaintiff fails to state a violation of the Fourth Amendment against defendant Johnson; and (3) Defendant Johnson is qualifiedly immune. Defendants also request dismissal of this case under Local Rule 110, or in the alternative, request the court to deem that Plaintiff has waived any substantive opposition arguments by failing to raise them, and grant Plaintiff's Rule 12(b)(6) motion to dismiss.

### A.  **Retaliation – First Amendment**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

///

In the Complaint, Plaintiff alleges that defendants Guzman, Gonzales, and Marsh issued him a Rules Violation Report (RVR) in retaliation for his filing a prison grievance on June 9, 2014. (ECF No. 1 at 6 ¶¶12-13.) Defendants argue that Plaintiff cannot state a retaliation claim against defendants Guzman, Gonzales, or Marsh because the RVR preceded Plaintiff's grievance. Moreover, Defendants argue that the RVR could not have been in response to Plaintiff's grievance as the RVR was approved *before* the alleged grievance was submitted. Defendants submit as evidence a copy of the RVR, together with the declaration of C. McConnell, Litigation Coordinator at High Desert State Prison. (McConnell Decl., ECF No. 27-2.) McConnell declares that the RVR is an official record from CDCR's electronic record-keeping system where "[s]uch records are made at or near the time of the disciplinary decisions, created and maintained in the course of regularly conducted activity." (Id. at 1-2 ¶2.)

### **Discussion**

Under the Prison Litigation Reform Act ("PLRA") the court has a statutory duty to screen complaints in cases such as this and dismiss any claims that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A. On February 29, 2016, the court conducted the requisite screening of Plaintiff's Complaint. (ECF No. 7.) Given the requirements of the PLRA, the court is disinclined to view with favor a subsequent motion seeking dismissal for failure to state a claim. However, in this instance, Defendants have presented documentary evidence proving that Plaintiff fails to state a retaliation claim against defendants Guzman, Gonzales, and Marsh.

Plaintiff's oppositions to the motion to dismiss are brief and do not address Defendants' arguments or oppose the evidence. (ECF Nos. 33, 48, 58.)

In the Complaint, Plaintiff alleges that on June 9, 2014, he filed a 602 prison grievance concerning Defendants' actions against him which occured on March 17 and March 18, 2014, when Defendants subjected Plaintiff to unclothed body searches. (ECF No. 1 at 6 ¶12.) Plaintiff also alleges that on June 19, 2014, defendants Guzman, Gonzales, and Marsh issued a retaliatory RVR against Plaintiff, falsely accusing him of delaying a peace officer. (Id. ¶13.) Under these allegations, the retaliatory RVR was filed *after* Plaintiff filed his grievance.

However, Defendants have submitted evidence showing that the RVR was issued *before* Plaintiff filed his grievance, and therefore could not have been issued in response to the grievance.

Defendants' evidence shows that a RVR was issued against Plaintiff for failing to return to his assigned cell on May 17, 2014, in time for Close Custody Count. (ECF No. 27-2 at 4.) The RVR was authored and signed by C/O A. Guzman and Sergeant J. Gonzales on May 18, 2014, and classified as a serious offense on May 19, 2014. (Id.) On May 21, 2014, Plaintiff was given a copy of the RVR and met with an assigned Staff Assistant to prepare for Plaintiff's disciplinary hearing. (Id. at 4, 7.) The report of the disciplinary hearing, which was held on June 4, 2014, was signed on June 8, 2014, by Lieutenant T. Marsh. (Id. at 5.) On June 19, 2014, Plaintiff was given a copy of the RVR form CDC 115-C. (Id. at 4-6.)

Defendants' documentary evidence may be considered by the court without converting Defendants' motion to dismiss to a motion for summary judgment. This is so because the RVR is material upon which Plaintiff's Complaint relies, and Plaintiff has not contested the RVR's authenticity. Sherman, 2009 WL 2241664, at *2 (citing Lee, 250 F.3d at 688). Under this evidence, the RVR could not have been issued by Defendants as a response in retaliation to the grievance Plaintiff filed on June 9, 2014 as the RVR was prepared and issued no later than May 19, 2014, Plaintiff was given a copy of the initial RVR on May 21, 2014, and Plaintiff's disciplinary hearing was held on June 4, 2014, which was all *before* June 9, 2014, the date Plaintiff filed the grievance. It is immaterial that Plaintiff was given a copy of the RVR again on June 19, 2014. Therefore, the court finds that Plaintiff fails to state a retaliation claim against defendants Guzman, Gonzales, and Marsh.

Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's First Amendment retaliation claim against defendants Guzman, Gonzales, and Marsh should be granted.

### B. <u>Unclothed Body Search -- Fourth Amendment</u>

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections extend to incarcerated prisoners. Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In determining the reasonableness of

a search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559. The reasonableness of a prisoner search is determined by reference to the prison context. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

The Supreme Court found reasonable "'[v]isual body cavity searches conducted after contact visits[1] as a means of preventing prisoners' possession of weapons and contraband, even absent probable cause.'" Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (quoting Michenfelder, 860 F.2d at 332, citing Bell, 441 U.S. at 558-60). In Thompson, the Ninth Circuit held that visual strip searches and urine tests to search for drugs were reasonably related to the prison officials' legitimate penological interest in keeping drugs out of prison. Id. at 701. However, "not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Id. at 700.

Defendants argue that Plaintiff does not state a Fourth Amendment claim against defendant Johnson because the visual-only search was conducted in a private place based on security concerns. Defendants assert that the search described in Plaintiff's Complaint was visual only, involved no touching, and occurred in a private place outside the view of other inmates and staff. Defendants also argue that the Complaint describes a legitimate justification for the visual strip-search because when Plaintiff went to the restroom on his way to the chapel, the detour and delay presented a clear opportunity for Plaintiff to obtain contraband and a weapon while outside of his cell, and therefore provided a legitimate basis for defendant Johnson's visual strip search.

---

[1] Referring to "contact visit[s] *with a person from outside the institution* . . . to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution." Bell, 441 U.S. at 558 (emphasis added).

9

///

**Discussion**

As stated above in this order, Plaintiff's oppositions to the motion to dismiss are brief and do not address Defendants' arguments. (ECF Nos. 33, 48, 58.)

On February 29, 2016, this court issued an order indicating that it had screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and found that "at the screening stage," it stated a cognizable claim against defendant Johnson under the Fourth Amendment for subjecting Plaintiff to a strip search without any explanation to justify the search. (ECF No. 7 at 7:2-3.) While the order finding cognizable claims did not include a full analysis,[2] the court conducted the same examination as it does in all screening orders. In other words, the court's conclusion was based upon the same legal standards as this 12(b)(6) motion.

In the initial screening, the court is required only to determine whether the Plaintiff should be allowed the opportunity to develop a factual record of the conditions of his confinement. Marion v. Columbia Correction Inst., 559 F.3d 693, 694 (7th Cir. 2009). There is no heightened pleading standard in § 1983 actions; rather, the general and less stringent requirements of Federal Rule of Civil Procedure 8 apply. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 163. As the Ninth Circuit has clarified, courts "continue to construe pro se filings liberally when evaluating them under Iqbal. "While the [Iqbal] standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)).

---

[2] Generally, the court provides a fully reasoned analysis only when it must explain why the complaint *does not* state at least one claim. In cases where the complaint states only cognizable claims against all named defendants, the court will issue a shorter screening order notifying plaintiff that his complaint states a claim and that he must submit service documents.

As discussed above, "not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Thompson, 111 F.3d at 700. The Supreme Court "articulated the following test to determine a search's reasonableness:

> 'The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place which it is conducted.'"

Id. (quoting Bell, 441 U.S. at 559).

Plaintiff's allegation that there was no legitimate reason given for the strip search is sufficient to state a cognizable claim at the screening stage, and Plaintiff should be allowed to develop a factual record. Defendants' argument that there was a legitimate basis for the strip search because Plaintiff's delay at the restroom presented a clear opportunity for Plaintiff to obtain contraband is not supported by facts in the Complaint. In the Complaint, the purpose of the search was not clear, there are no allegations that inmates waiting for the restroom are routinely subjected to searches or have a clear opportunity to obtain contraband, and Plaintiff was not told why he was not allowed to return to his religious services. Defendants' arguments are more properly raised at the summary judgment stage of the case, not the screening stage.

Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's Fourth Amendment claim against defendant Johnson should be denied.

C. **Qualified Immunity**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting Reichle v. Howards, 566 U. S. 658, 132 S.Ct. 2088, 2093 (2012). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" Tarabochia

v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014), quoting Robinson v. York, 566 F.3d 817, 821

///

(9th Cir. 2009). These prongs need not be addressed in any particular order. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." Chappell v. Mandeville, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), receded from on other grounds by Pearson, 355 U.S. at 817-21; see also Bryan v. MacPherson, 630 F.3d 805, 817 (9th Cir. 2010). However, the existence of a material factual dispute does not necessarily preclude a finding of qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

Under the second prong, clearly established law is not to be defined "at a high level of generality." Mullenix v. Luna, --- U.S. ---, 136 S. Ct. 305, 308 (2015), quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Id. (emphasis added in Mullinex). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Id. (internal quotation marks and citations omitted). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in the [specific circumstances confronted] 'beyond debate.'" Id., at 309, quoting al–Kidd at 741.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle, 132 S.Ct. at 2092; see also Castro v. County of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." al-Kidd, 563 U.S. at 743 (citation and internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 741. "[A] 'robust consensus of cases of persuasive authority'" in the Courts of Appeals could establish the federal right [in

question]." City and County of San Francisco v. Sheehan, --- U. S. ---, 135 S.Ct. 1765, 1778 (2015).

Defendant Johnson argues that he is entitled to qualified immunity because a reasonable officer in Johnson's position would not believe that visually searching an inmate in a private place outside the view of other inmates – after the inmate had not reported to his religious service, and was specifically summoned via the prison's loudspeaker – would violate that inmate's rights. Defendants cite case law where courts have found visual strip searches reasonable following an inmate's opportunity to obtain contraband.

**Discussion**

Here, additional facts are required to determine the reasonableness of defendant Johnson's actions. Though a ruling on qualified immunity should occur early in proceedings, at this point the court cannot determine whether qualified immunity exists without drawing inferences in favor of the defendants, which the court is not permitted to do when ruling on a motion to dismiss. Therefore, the Defendant's motion to dismiss on grounds of qualified immunity should be denied.

**V. MOTION TO DISMISS UNDER LOCAL RULE 110, OR IN THE ALTERNATIVE, TO GRANT RULE 12(b)(6) MOTION AS UNOPPOSED**

Defendants request the court to dismiss this case under Local Rule 110, or in the alternative, to deem that Plaintiff has waived any substantive opposition arguments by failing to raise them, and then grant Plaintiff's Rule 12(b)(6) motion to dismiss on that basis. Local Rule 110 provides:

> Sanctions For Noncompliance With Rules. Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court.

L.R. 110.

Defendants argue that this case should be dismissed under Local Rule 110 based on Plaintiff's failure to comply with the court's orders requiring Plaintiff to file an opposition to Defendants' Rule 12(b)(6) motion to dismiss. In determining whether to dismiss this action for

failure to comply with the directives set forth in its order, "the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

**Background**

On December 14, 2016, Defendants filed their Rule 12(b)(6) motion to dismiss. (ECF No. 27.) Plaintiff was required to file an opposition or a statement of non-opposition to the motion within twenty-one days, but by April 13, 2017, he had not done so. Local Rule 230(*l*). On April 13, 2017, the court issued an order requiring Plaintiff to file an opposition or statement of non-opposition within twenty-one days of the date of service of the order. (ECF No. 32.) The court forewarned Plaintiff that his failure to comply with the order may result in the dismissal of this action. (Id. at 2:13-14.)

On May 2, 2017, Plaintiff filed a notice of non-opposition to the motion to dismiss. (ECF No. 33.) However, Plaintiff indicated in the notice that he mistakenly believed Defendants' motion to dismiss had previously been denied. (Id.) The court responded on May 9, 2017, and granted Plaintiff twenty-one additional days to file a new opposition. (ECF No. 34.) The court again forewarned Plaintiff that his failure to comply with the order may result in the dismissal of this case. (Id. at 3:15-16.)

On July 20, 2017, Plaintiff filed an untimely opposition without his signature. (ECF No. 39.) On July 24, 2017, the court issued an order striking the unsigned opposition and requiring Plaintiff to submit another opposition bearing his signature within fourteen days. (ECF No. 40.) The court again forewarned Plaintiff that his failure to comply with the order may result in the dismissal of this case. (Id. at 2:1-2.)

On August 7, 2017, Plaintiff filed a document titled "Motion to Attack Defendants' Opposition." (ECF No. 48.) This document did not address Defendants' arguments in the motion to dismiss.

14

On August 31, 2017, Plaintiff was granted another opportunity to file an opposition to the motion to dismiss. (ECF No. 52.) The court again forewarned Plaintiff that his failure to comply with the order may result in the dismissal of this case. (Id. at 5:4-5.) On September 18, 2017, Plaintiff filed a document titled "Motion: Filing a Non-opposition to the Defendants' Motion." (ECF No. 58.) This document did not address Defendants' arguments in the motion to dismiss.

### Discussion

Defendants have addressed each of the five factors from Pagtalunan listed above, concluding that this action should be dismissed based on Plaintiff's repeated failures to abide by the court's multiple warnings of dismissal. Pagtalunan, 291 F.3d at 642. The court does not disagree with Defendants' arguments; however, the court declines to dismiss this case under Local Rule 110. To the extent possible, the Court endeavors to resolve motions on their merits. Moreover, where a plaintiff appears *in pro per* in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. See Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988); also see Haines, 404 U.S. at 520. In this case, Plaintiff has consistently expressed his intent to proceed with the litigation and participate to the best of his ability. Plaintiff is responsive to court orders, although he admits that he is sometimes unsure how to respond. Therefore, Defendants' motion to dismiss this case pursuant to Local Rule 110 should be denied.

For the same reasons, Defendants' motion to deem that Plaintiff has waived any substantive opposition arguments by failing to raise them, and to grant Plaintiff's Rule 12(b)(6) motion to dismiss on that basis, should be denied.

### VI. CONCLUSION AND RECOMMENDATIONS

The court finds that Defendants' Rule 12(b)(6) motion to dismiss certain claims for failure to state a claim should be granted in part and denied in part. The motion should be granted as to the retaliation claim against defendants C/O Guzman, Sergeant Gonzales, and Lieutenant Marsh. The motion should be denied, at the screening stage, as to the Fourth Amendment claim against defendant C/O Johnson. The court also finds that C/O Johnson is

not entitled to dismissal based on qualified immunity.

///

In addition, the court finds that Defendants' motion to dismiss this case under Local Rule 110, or in the alternative, to grant the 12(b)(6) motion on the basis that Plaintiff has waived his opposition, should be denied.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Rule 12(b)(6) motion to dismiss, filed on December 14, 2016, be GRANTED IN PART AND DENIED IN PART;

2. Defendants' motion to dismiss Plaintiff's retaliation claim against defendants C/O Guzman, Sergeant Gonzales, and Lieutenant Marsh be GRANTED;

3. Plaintiff's retaliation claim be DISMISSED from this action for failure to state a claim;

4. Defendant Marsh be DISMISSED from this action for Plaintiff's failure to state any claims against him;

5. Defendants' motion to dismiss Plaintiff's Fourth Amendment claim against defendant C/O Johnson be DENIED;

6. Defendant Johnson's motion to dismiss based on qualified immunity be DENIED;

7. Defendants' motion to dismiss this case under Local Rule 110, or in the alternative, to grant the 12(b)(6) motion on the basis that Plaintiff waived his opposition arguments, filed on August 14, 2017, be DENIED;

8. This case now PROCEED only against defendants C/O Johnson, C/O Guzman, Sergeant Gonzales, and C/O Sheldon on Plaintiff's Fourth Amendment claims for unreasonable unclothed body searches;

9. Defendants Johnson, Guzman, and Gonzales be REQUIRED to file an Answer to the Complaint within thirty days; and

10. This case be REFERRED back to the assigned Magistrate Judge for further proceedings.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **fourteen (14) days** after the date of service of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen (14) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **October 20, 2017**            **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE