UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC DA'BOUR DAWSON,<br><br>    Plaintiff,<br><br>    v.<br><br>BEARD, et al.,<br><br>    Defendants. | 1:15-cv-01867-DAD-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NO. 9.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

## I. BACKGROUND

Isaac Da'bour Dawson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction. (ECF No. 4.) Defendants have appeared but have not consented to nor declined magistrate judge jurisdiction.

The Court previously screened Plaintiff's complaint before any defendants appeared.[1] (ECF No. 9.) The Court found that Plaintiff stated cognizable Fourth Amendment claims against defendants Johnson, Guzman, Gonzales, and Sheldon; and cognizable First Amendment

---
[1] Magistrate Judge Dennis L. Beck was the assigned magistrate judge until September 8, 2016. (ECF No. 23).

1

claims against defendants Guzman, Gonzales, and Marsh; and dismissed all other claims and defendants. (ECF No. 9.) Prior to the Court dismissing claims and defendants, Plaintiff agreed to proceed only on the claims found cognizable by the Court. (ECF No. 8.) The case now proceeds against defendants J. Gonzales, A. Guzman, Johnson, T. Marsh, and Sheldon.

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss defendants consistent with the order by the magistrate judge at the screening stage.

## II. WILLIAMS V. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, Defendants were not served at the time the Court issued its order dismissing claims, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss Plaintiff's claims based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims previously dismissed by this Court, for the reasons provided in the Court's screening order.

## III. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no *respondeat superior* liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### IV. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at High Desert State Prison. During the events giving rise to this action, Plaintiff was incarcerated at Corcoran State Prison (CSP) in the custody of the California Department of Corrections and Rehabilitation (CDCR).

Plaintiff names as defendants: Jeffery Beard (Secretary of the CDCR), Dave Davey (Warden of CSP), M. Jennings (Associate Warden of CSP), Captain R. Whitford, Lieutenant T. Marsh, Sergeant J. Gonzales, Sergeant J. Arnett, Correctional Officer (C/O) Noland, and C/O Flores.

Plaintiff alleges the following.

On May 17, 2014, Plaintiff was released from his housing unit to morning religious House of Yahweh services. On his way, Plaintiff had to use the restroom. While he was waiting to use the restroom, he was called back to his housing unit via the loudspeaker. Plaintiff returned to his housing unit and Defendant Johnson placed him in the shower.

Defendant Johnson ordered him to strip naked and submit to an unclothed body inspection. "Without warning or reason," Plaintiff was instructed to open his buttocks for inspection. He was then instructed to squat twice and cough. ECF No. 1, at 4. Defendant Johnson told Plaintiff to face him and lift his penis and scrotum. Afterwards, Plaintiff was instructed to report back to his cell. He was never told why he was subjected to a "humiliating body cavity inspection." ECF No. 1, at 4.

On May 18, 2014, Plaintiff was released to religious services. While attending services, Plaintiff went to use the restroom twice. Five minutes after his second visit, Defendants Sheldon and Guzman interrupted services and told Plaintiff to get up. Plaintiff was then escorted to the yard patio, which was occupied by at least 100 other prisoners, female guards and staff. Defendant Gonzales instructed Defendants Guzman and Sheldon to strip search Plaintiff in front of prisoners and female staff. Defendants Guzman and Sheldon ordered Plaintiff to remove his clothing while Defendant Gonzales watched. Plaintiff was instructed to spread his buttocks, squat twice and cough, and lift his penis and scrotum. Plaintiff contends that he was humiliated in full view of prisoners and female staff members. Defendants did not provide an explanation to justify the search.

When Plaintiff tried to put his clothing back on, Defendant Guzman told him to put on only his boxers and then walk back to his housing unit. Plaintiff asked that he be allowed to fully dress because he felt humiliated. Defendant Guzman told him no and said that Plaintiff

would be written up for failing to follow staff instructions if he did not walk back as instructed. Plaintiff complied and began walking, feeling ashamed and belittled. Plaintiff has a mental health disorder and is a participant in the prison's CCCMS program, and he contends that he did not know how to react or deal with the traumatizing situation. As time went on, he became severely depressed and ashamed to leave his cell.

On June 9, 2014, Plaintiff filed an appeal relating to Defendants' actions on May 17 and 18. On June 19, 2014, Plaintiff received a retaliatory Rules Violation Report ("RVR") authored by Defendants Guzman, Gonzales and Marsh. The RVR falsely stated that Plaintiff delayed a peace officer during the custody count on May 18. Plaintiff contends that at the time of the custody count, he was being humiliated by Defendants Guzman, Sheldon and Gonzales and therefore could not return back to his housing unit. Defendant Marsh found Plaintiff guilty of the violation after a hearing, even though he knew that Plaintiff was being strip searched at the time of the count, and had the supporting evidence.

On July 1, 2014, Plaintiff was interviewed by Defendant Arnett about his appeal. The interview consisted of Defendant Arnett urging Plaintiff to withdraw his appeal. He offered Plaintiff material items, promised Plaintiff that the RVR would be dropped, and promised to reinstate Plaintiff on the religious services list. Plaintiff declined to withdraw his appeal and told Defendant Arnett that he was violating CDCR policy and Plaintiff's constitutional rights. Defendant Arnett told Plaintiff that he would regret his decision, and that the rest of Plaintiff's prison time served on Defendant Arnett's yard would be difficult.

Since that threat, Plaintiff has been removed from the religious services attendance list, which denied him the ability to practice his religion. Each time that he has tried to gain access to religious services, he has been denied. On June 7, 2014, Plaintiff tried to access services and was denied by Defendant Noland, who told him that Defendant Marsh ordered that Plaintiff not be permitted to attend any religious services. He has also been harassed and forced to endure unreasonable and unwarranted cell searches and body searches. On July 8, 2014, Plaintiff again attempted to access religious service, but was denied by Defendant Flores. Defendant Flores told him that the denial was based on his refusal to withdraw his appeal. Plaintiff was

also denied his right to fast from August 14, 2014, through September 14, 2014, which was part of his religious worship. Each time Plaintiff passed Defendants Flores, Guzman, or Gonzales, he was singled out and called degrading names, and threatened with strip searches.

Plaintiff alleges that Defendants Beard, Davey, and Jennings are responsible for supervising and training Defendants. He contends that these supervisory Defendants failed to provide their employees with the proper training, which resulted in a violation of Plaintiff's constitutional rights.

Plaintiff requests as relief monetary damages, attorney's fees, appointment of counsel, appointment of experts, costs of suit, and declaratory relief.

## V. ANALYSIS

### A. Linkage

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-23 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969. As explained above, the sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

Here, Plaintiff names Defendant Whitford as a Defendant and includes him in his claim based on a false RVR. However, he does not set forth any facts to explain how Defendant Whitford was involved. Plaintiff states that Defendants "R. Whitford, T. Marsh, J. Gonzales" failed to review exculpatory evidence, in violation of his due process rights, but this conclusory statement is insufficient to satisfy the requirements of Rule 8.

Plaintiff therefore fails to state a claim against Defendant Whitford.

///

///

## B. Unclothed Body Searches

### 1. *Fourth Amendment*

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections extend to incarcerated prisoners. Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In determining the reasonableness of a search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559. The reasonableness of a prisoner search is determined by reference to the prison context. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

In analyzing these factors, the cross-gender nature of the search is a critical consideration. Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1143 (9th Cir. 2011). It has long been recognized "that the desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity," id. at 1141 (citing York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)) (internal quotation marks and alternations omitted), and the Ninth Circuit recently stated that the "litany of cases over the last thirty years has a recurring theme: cross gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches," id. at 1146.

Plaintiff alleges that the unclothed strip searches were conducted without reason and, at least with regard to the second search, out in the open in front of prisoners and female staff. At the screening stage, the Court finds that this states a claim under the Fourth Amendment against Defendants Guzman, Gonzales, Sheldon and Johnson.

### 2. *Eighth Amendment*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th

Cir. 2006). In some instances, infliction of emotional pain may constitute cruel and unusual punishment prohibited by the Eighth Amendment. See Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (holding that contact searches of female prisoners by male guards violated Eighth Amendment). Prison officials are not liable for inflicting pain on a prisoner through body search techniques unless the official acted with deliberate indifference to a serious risk of harm to the prisoners, id. at 1528, or subjected the prisoner to "unnecessary and wanton infliction of pain," see Koch v. Ricketts, 82 F.3d 317, 318 (9th Cir. 1996) (acknowledging that prison guards' conducting a body cavity search could in certain circumstances violate an inmate's Eighth Amendment rights).

The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim, and "routine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

Here, while Plaintiff alleges that he was subject to two unclothed body searches, the searches did not result in Plaintiff being subjected to conditions so severe and/or prolonged that they rise to the level of an Eighth Amendment violation. Johnson, 217 F.3d at 731-32. The mere public nature of the searches, or any resulting embarrassment, is not sufficient to implicate the Eighth Amendment. Somers v. Thurman, 109 F.3d 614, 622-23 (9th Cir.1997).

### C. Denial of Right to Practice Religion

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate

///

penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner, 482 U.S. at 107).

Plaintiff alleges that on numerous occasions, he was denied access to religious services. He also alleges that he was denied the right to fast, though he does not fully explain that allegation. Plaintiff does not, however, allege or explain why these denials substantially burdened his ability to practice his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.

Plaintiff therefore fails to state a claim under the First Amendment.

### D. False RVR/Disciplinary Hearing

#### 1. *False RVR*

Insofar as Plaintiff alleges that Defendants Guzman, Gonzales, Marsh and Whitford violated the First and Fourteenth Amendments by issuing a false RVR, he cannot state a claim. The issuance of a false RVR does not, in and of itself, support a claim under section 1983. See e.g., Ellis v. Foulk, 2014 WL 4676530, at *2 (E.D.Cal. 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, 2014 WL 294576, at *2 (N.D.Cal. 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, 2012 WL 5914913, at *1 (N.D.Cal. 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, 2013 WL 6243280, at *6 (E.D.Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)).

The issuance of a false RVR, alone, does not state a claim under section 1983. Any claim would arise from Plaintiff's procedural due process rights, discussed below.

///

///

## 2. *Disciplinary Hearing*

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56 (emphasis added).

Here, Plaintiff alleges that Defendant Marsh, the hearing officer, found him guilty even though "he was in possession and/or reach of evidence/ information" which he knew to be true, and which Plaintiff characterizes as "exculpatory" in nature. ECF No. 1, at 6. Plaintiff alleges that it was Defendant Marsh's duty to review exculpatory evidence and dismiss or modify the pending charges. He suggests that Defendant Marsh purposefully prevented Plaintiff from presenting his evidence.

Plaintiff's allegations are too vague to state a claim. On one hand, Plaintiff states that Defendant Marsh knew of the evidence yet found him guilty nonetheless. Simply disagreeing

with evidence, without more, does not state a claim. On the other hand, Plaintiff states that Defendant Marsh affirmatively prevented him from providing evidence. Preventing a prisoner from presenting evidence may rise to the level of a due process violation.

### E. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that he was issued a false RVR, and subsequently found guilty of the charges, in retaliation for filing a grievance related to the search. At the screening stage, this is sufficient to state a First Amendment claim against Defendants Guzman, Gonzales and Marsh.

#### 1. *Retaliatory Cell Searches and Intimidation*

Plaintiff does not set forth supporting facts relating to his claim that Defendant Arnett conducted retaliatory cell searches. He states that Defendant Arnett told him, in retaliation for refusing to withdraw his grievances, that rest of his prison time served on Defendant Arnett's yard would be difficult. He alleges later that he has been harassed and forced to endure unreasonable and unwarranted cell searches and body searches, though he does not provide facts as to the instances of unwarranted searches or who conducted the searches. Given this failure, Plaintiff does not state a claim under the First, Fourth or Eighth Amendments.

Insofar as Plaintiff believes that harassment and/or intimidation alone gives rise to an Eighth Amendment claim, he is incorrect. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

### F. Failure to Train and/or Supervise

Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff asserts a failure to train theory against supervisory Defendants Beard, Davey and Jennings. However, regardless of the theory under which a claimant attempts to impose liability on supervisory personnel, facts must exist to demonstrate that those in a supervisory position *knew* of the inadequacies and failed to correct them. A conclusory assertion that Defendants failed to properly train and supervise staff will not support a cognizable claim for relief under section 1983. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Lemire v. California Dept. of Corrections and Rehabilitation, 726 F.3d 1062, 1074-75; see also Marsh v. County of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional violation are insufficient to support a "failure to train" theory).

### G. State Law Claims

Plaintiff alleges claims under state law for intentional infliction of emotional distress and negligent infliction of emotional distress. However, the Government Claims Act requires exhaustion of those claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff has not alleged compliance with the claims process and he therefore cannot state any tort claims under California law.

## VI. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's Fourth Amendment claim against Defendants Johnson, Guzman, Gonzales and Sheldon; and First Amendment retaliation claim against Defendants Guzman, Gonzales and Marsh; and

2. Defendants Beard, Davey, Jennings, Whitford, Arnett, Noland and Flores be DISMISSED from this action, based on Plaintiff's failure to state any claims against them.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days of the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 7, 2017**         **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE